IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHN W. SMITH, | : | |
|     Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| BETHEL TOWNSHIP and | : | |
| JOHN L. CAIRO, | : | No. 11-2967 |
|     Defendants. | : | |

MEMORANDUM

Schiller, J.                                                                                                         January 5, 2012

    Plaintiff John Smith wanted to unionize Bethel Township's part-time police force after some long-serving officers were relieved of duty. To further his efforts, Smith posted pro-union flyers throughout the Bethel Township office building. The chief of police, John Cairo, removed some of the flyers. Smith and Chief Cairo did not have the best working relationship, and after several incidents, Smith was relieved of his duties as a Bethel Township police officer. He claims he was retaliated against for trying to form a union, a charge Defendants deny. Were this the first time Smith tried to press this claim, he might be entitled to have his day in federal court. But he has already brought Bethel Township before the Pennsylvania Labor Relations Board for the same conduct he complains about here. Defendants filed a motion for summary judgment based on issue preclusion. Because the Court agrees with Defendants that Smith has already had his claims adjudicated, the Court grants the motion.

I.    BACKGROUND

    Smith was a part-time police officer in Bethel Township from 2003 to April of 2009. (Defs.' Mot. for Summ. J. Ex. B [Hr'g Officer Decision].) Bethel Township is governed by a three-member

board of supervisors. (*Id*.) With the exception of the chief of police, the Bethel Township police force is composed entirely of part-time officers. (*Id*.)

In 2008, one of the Bethel Township supervisors, Michael George, held a meeting of police officers during which he saw pro-union literature. (*Id*.) George threatened to fire the person responsible for the literature and to disband the police department. (*Id*.) George became the Bethel Township manager in 2009, and he was forced to resign his supervisor position as a result. (*Id*.) The Bethel Township manager does not supervise the police department; rather, like the chief of police, the manager reports to the Bethel Township board of supervisors. (*Id*.)

The former Bethel Township chief of police died in November of 2008. (*Id*.) Smith was close to the former chief. (*Id*.) At the time of the former chief's passing, several other officers left the police force. (*Id*.) Smith was upset about the former chief's passing and the departure of these officers. (*Id*.)

Defendant John Cairo became the new chief of police in 2008. (*Id*.) In January of 2009, against the directive of Chief Cairo that Smith remain on patrol, Smith attended a reorganization meeting. (*Id*.) Also in January of 2009, Smith posted flyers from the Teamsters at the Bethel Township office building. (*Id*.) The flyers explained the benefits of union representation for part-time officers. (*Id*.) Smith posted the flyers on the front door of the building, in private offices in the building, and in the office mail boxes of all police officers. (*Id*.)

Chief Cairo did not work against Smith's unionizing efforts; in fact, he gave Smith the personal telephone numbers of the officers. (*Id*.) Chief Cairo did, however, remove the flyers from areas of public access because he deemed them a nuisance. (*Id*.)

On April 3, 2009, Smith failed to report for a scheduled shift. (*Id*.) Smith later explained to

Chief Cairo that he was on vacation and had not received the schedule. (*Id.*) Chief Cairo telephoned Smith and requested a meeting with him to resolve any issues Smith was having. (*Id.*) Smith told Chief Cairo to put his request in writing and then hung up the phone; the meeting never occurred. (*Id.*) When Smith came to the station two days later, he discovered that his name had been taken off of the April schedule. (*Id.*)

On May 14, 2009, Smith filed a charge of unfair labor practices under the Pennsylvania Labor Relations Act against Bethel Township. (Defs.' Mot. for Summ. J. Ex. A [Smith's Unfair Labor Practice Charge].) The charge claimed that Smith attempted to start a union to protect workers because some long-serving officers had been fired. (*Id.*) He alleged that Chief Cairo took down union flyers he had posted, and a lieutenant told Smith that if he continued to post such flyers, he would lose his job. (*Id*). Smith reported that he "felt harassed and felt that [he] was being coerced into submission by the Bethel Police Chief as well as the Bethel Township Board of Supervisors." (*Id.*) The charge before the labor relations board noted that George threatened to disband the police department if those in the department tried to unionize. (*Id.*) Smith claimed that other officers were afraid to come forward for fear of losing their jobs. (*Id.*)

A hearing was held, during which Smith and Bethel Township presented evidence and cross-examined witnesses. (*See* Defs.' Mot. for Summ. J. Ex. C [Hr'g Tr.].) In a written decision, the hearing examiner framed Smith's claim as follows: "the Chief of Police removed [Smith] from the schedule of part-time police officers as an act of retaliation for his efforts to try to organize officers into a labor organization represented by the Teamsters." (Hr'g Officer Decision.) Ultimately, the hearing officer determined that Smith failed to prove that Chief Cairo was motivated by Smith's protected activity of trying to unionize. (*Id.*) The hearing examiner believed that Chief Cairo

removed Smith due to concerns about Smith's recent behavior, including his failure to appear for duty, his refusal to meet with Chief Cairo, and his hanging up the phone on Chief Cairo. (*Id.*) Although George made an anti-union statement in 2008, his statement was not directed at Smith's attempt to form a union. (*Id.*) Additionally, Chief Cairo did not report to George, and George played no role in Smith's removal. (*Id.*) The hearing officer found no anti-union sentiment in Chief Cairo's removal of Smith's pro-union flyers because Chief Cairo permitted the flyers to remain in non-public areas and he provided Smith with the police officers' phone numbers to help him unionize the force. (*Id.*) The hearing officer also concluded that Bethel Township did not interfere with, restrain, or coerce employees in exercising their rights under the Pennsylvania Labor Relations Act. (*Id.*) Nothing Chief Cairo did could have had a tendency to coerce employees from exercising their rights. (*Id.*)

Smith timely filed exceptions to the hearing officer's decision. (Defs.' Statement of Facts in Supp. of Mot. for Summ. J. ¶ 5.) The decision was upheld, as "[t]he substantial evidence, credited by the Hearing Examiner, supports the finding that it was not Officer Smith's protected organizing efforts that motivated Chief Cairo to remove Smith from the schedule in April 2009, but rather Smith's recent behavior unrelated to his union activity." (Defs.' Mot. for Summ. J. Ex. D [Pa. Labor Relations Bd. Final Order].)

Smith did not appeal the Final Order; instead, he filed this lawsuit. Smith's Complaint alleges that as a result of his efforts to unionize, Bethel Township "began a deliberate course of harassment and intimidation against Plaintiff." (Defs.' Mot. for Summ. J. Ex. E [Compl.] ¶¶ 10, 32.) This course of action allegedly led to Smith's discharge without a legitimate reason. (*Id.* ¶¶ 11-12, 14, 22, 33-34, 36, 41.) Smith alleges that his attempts to unionize constituted free speech and that Defendants fired

him in violation of his First Amendment rights. (*Id.* ¶¶ 23-25, 42-44.) Four counts remain from Smith's Complaint: two wrongful termination claims against Bethel Township and Chief Cairo, and two First Amendment retaliation claims against Bethel Township and Chief Cairo.

## II.   STANDARD OF REVIEW

Summary judgment is appropriate when the admissible evidence fails to demonstrate a genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). When the movant does not bear the burden of persuasion at trial, it may meet its burden on summary judgment by showing that the nonmoving party's evidence is insufficient to carry its burden of persuasion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).

Thereafter, the nonmoving party demonstrates a genuine issue of material fact if it provides evidence sufficient to allow a reasonable finder of fact to find in its favor at trial. *Anderson*, 477 U.S. at 248. In reviewing the record, a court "must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor." *Prowel v. Wise Bus. Forms*, 32 F.3d 768, 777 (3d Cir. 2009). The court may not, however, make credibility determinations or weigh the evidence in considering motions for summary judgment. *See Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150 (2000); *see also Goodman v. Pa. Tpk. Comm'n*, 293 F.3d 655, 665 (3d Cir. 2002).

## III.   DISCUSSION

Defendants contend that Smith's claims are barred by collateral estoppel. Collateral estoppel, or issue preclusion, bars re-litigating issues that have already been decided, even in lawsuits on

different causes of action. *See McNeil v. Owens-Corning Fiberglas Corp.*, 680 A.2d 1145, 1147-48 (Pa. 1996) (noting that prior determination of an issue is conclusive in a subsequent action between the parties, whether on the same or a different claim). Once the issue has been raised and adjudicated, the entire issue, not just the particular arguments raised previously, is precluded. *Mclaughlin v. Fisher*, 277 F. App'x 207, 213 (3d Cir. 2008).

"Federal courts must give preclusive effect to administrative findings of a state agency acting in a judicial capacity." *Hitchens v. Cnty. of Montgomery*, 98 F. App'x 106, 111 (3d Cir. 2004). Courts have held that issue preclusion applies to factual findings and decisions of the Pennsylvania Labor Relations Board. *See Mclaughlin*, 277 F. App'x at 215; *Hinshillwood v. Cnty. of Montgomery*, Civ. A. No. 00-4283, 2002 WL 1773059 (E.D. Pa. July 31, 2002); *Stokes v. Bd. of Trs. of Temple Univ.*, 683 F. Supp. 498, 500 (E.D. Pa. 1988).

To decide whether issue preclusion applies here, the Court must look to the law of Pennsylvania, as the Pennsylvania Labor Relations Board rendered the previous decision. *See Del. River Port Auth. v. Fraternal Order of Police*, 290 F.3d 567, 572-73 (3d Cir. 2002) ("[The Full Faith & Credit Act] therefore requires state court decisions be given the same preclusive effect in federal court they would be given in the courts of the rendering state.") For issue preclusion to apply under Pennsylvania law, the following four factors must be met: (1) the issue determined in the prior action is identical to the one in a subsequent action; (2) the previous judgment is final on the merits; (3) the party against whom the defense is invoked is identical to or in privity with the party in the first action; and (4) the party against whom preclusion is sought had a full and fair opportunity to litigate the issue in the prior action. *Greenleaf v. Garlock, Inc.*, 174 F.3d 352, 357-58 (3d Cir. 1999); *Rue v. K-Mart Corp.*, 713 A.2d 82, 84 (Pa. 1998).

A. **Identical Issue**

Defendants must demonstrate that the issue actually litigated previously is identical to the issue presently before the Court. *See Hitchens*, 98 F. App'x at 112; *Ocasio v. Ollson*, 596 F. Supp. 2d 890, 897 (E.D. Pa. 2009) ("Defendants, as the parties seeking to effectuate an estoppel, have the burden of demonstrating the propriety of its application."). "To defeat a finding of identity of the issues for preclusion purposes, the difference in the applicable legal standards must be substantial." *Raytech Corp. v. White*, 54 F.3d 187, 191 (3d Cir. 1995). "The fundamental question is whether the issue has been *actually decided* by a court in a prior action." *R & J Holding Co. v. Redev. Auth. of Cnty. of Montgomery*, – F.3d –, 2011 WL 6117857, at *6 (3d Cir. 2011).

Smith provides no support for his assertion that "[t]he issues actually presented in this matter before the [Pennsylvania Labor Relations Board] are distinct and different from Plaintiff's claims now before this Court." (Pl.'s Mem. of Law in Opp'n to Defs.' Mot. for Summ. J. at 9.) Nor can the Court find any support in the record for this statement. As Plaintiff articulates his case, his retaliation claim is based on his termination in the face of his unionization efforts as well as his decision to candidly offer his opinions about his supervisor's lack of qualifications. (*Id*.) But the hearing examiner clearly considered the effect of Smith's attempt to unionize on Chief Cairo's decision to leave Smith off the schedule and determined that the decision to terminate Smith was the result of Smith's failure to report for duty and to meet with Chief Cairo, not Smith's desire to organize police officers in Bethel Township. That finding was upheld by the Pennsylvania Labor Relations Board. Further, the Final Order noted that prior to Smith's termination, "Chief Cairo was aware of reports that Officer Smith had made disparaging remarks about the Township police department to newly hired officers." (Pa. Labor Relations Bd. Final Order.) Thus, Smith failed to show that Chief Cairo's

actions were motivated by Smith's protected activity. Even considering George's anti-union statement in 2008 and Chief Cairo's decision to remove some of Smith's pro-union flyers, the hearing examiner could draw no inference of anti-union animus from Bethel Township or the decision to terminate Smith.

The reason behind the decision to terminate Smith is also the ultimate issue before this Court. To succeed on his First Amendment retaliation claim, Smith must show that he engaged in activity protected by the First Amendment, and that the protected activity was a substantial or motivating factor in the alleged retaliatory action. *Hill v. Borough of Kutztown*, 455 F.3d 225, 241 (3d Cir. 2006). The hearing officer framed the question before him as whether Bethel Township's action constituted an "act of retaliation for [Smith's] efforts to try to organize officers into a labor organization represented by the Teamsters." (Hr'g Officer Decision.) The Final Order upholding the hearing officer's decision agreed that Smith failed to show that unlawful union animus motivated the actions of Bethel Township. (Pa. Labor Relations Bd. Final Order.) Furthermore, this case arises from the same facts that led to Smith's unfair labor practices charge. Thus, this Court is faced with rendering a decision, or allowing a jury to render a decision, on facts already found and legal decisions already decided. *See Hinshillwood*, 2002 WL 1773059, at *3 (holding that First Amendment retaliation claim was precluded because Pennsylvania Labor Relations Board already considered same issues using same legal framework).

As for Plaintiff's wrongful termination claim, in certain narrow circumstances, an at-will employee such as Smith can sue an employer under Pennsylvania law for wrongful termination claiming that the termination violated public policy. *See Shick v. Shirey*, 716 A.2d 1231 (Pa. 1998). "A claim for wrongful discharge is made out when the plaintiff establishes that his or her discharge

is a violation of a clearly definable right that 'strikes at the heart of citizens' social right, duties and responsibilities.'" *Kuzel v. Krause*, 658 A.2d 856, 860 (Pa. Commw. Ct. 1995) (quoting *Yaindl v. Ingersoll-Rand Co.*, 422 A.2d 611, 617 (Pa. Super. Ct. 1980)); *Hunger v. Grand Cent. Sanitation*, 670 A.2d 173, 175 (Pa. Super. Ct. 1996) (noting that Pennsylvania recognizes common law wrongful termination claim for at-will employees only if the employee can point to clear public policy articulated in the constitution, judicial decision, regulation, or legislation, and the stated public policy applies directly to employee and employee's actions). Smith does not point to any public policy that was violated by Defendants' actions. In fact, he does not even mention his wrongful termination claim in his response to Defendants' motion for summary judgment. Regardless, he cannot overcome the previous determination that his termination was not based on any wrongful conduct by Bethel Township. As such, his Pennsylvania wrongful termination claim is also barred.

Finally, the Third Circuit has directed district courts to look beyond "the superficial similarities" between issues and review whether the policies behind the two actions are identical. *Swineford v. Snyder Cnty. Pa.*, 15 F.3d 1258, 1267 (3d Cir. 1994) (citing *Odgers v. Unemp't Comp. Bd. of Review*, 525 A.2d 359, 354 (Pa. 1987)); *see also Mclaughlin*, 277 F. App'x at 217. "Only where the two actions promote similar policies will the two issues be identical for purposes of issue preclusion." *Swineford*, 15 F.3d at 1267-68. Even with this additional consideration, issue preclusion bars Smith's claims because the policy considerations are irrelevant here. The Pennsylvania Labor Relations Board determined that Smith's termination was not motivated by anti-union sentiment. This is a factual determination that played a central role in Smith's unfair labor practices charge and would take center stage before this Court as well. *See Rue*, 713 A.2d at 85 ("A fact is a fact, regardless of public policy. Thus, we conclude that the first prong of the collateral estoppel test,

9

identity of issues, is satisfied here.").

For Smith to recover in this Court, he would be required to show that his protected unionizing activity was a substantial or motivating factor in his termination. In other words, he would have to show exactly what the Pennsylvania Labor Relations Board concluded he had failed to show.

### B.      Final Judgment on the Merits

The Pennsylvania Labor Relations Board adopted the hearing officer's decision, thereby rendering a final order. *See* 34 Pa. Code § 95.98(f)(1); *see also Hinshillwood*, 2002 WL 1773059, at *4 (noting that the Pennsylvania Labor Relations Board is vested with ultimate authority to determine if party committed an unfair labor practice). Smith took the decision of the Pennsylvania Labor Relations Board no further; it is thus a final judgment on the merits.

### C.      Identical Parties

Here, the party against whom issue preclusion is to be applied, Smith, is the same party who brought the first action. The fact that this case involves a defendant, Chief Cairo, who was not a defendant in the previous action does not foreclose the application of issue preclusion here. *See Witkowski v. Welch*, 173 F.3d 192, 200 n.10 (3d Cir. 1999) (noting that Pennsylvania law requires only that the party against whom an estoppel is to be applied was a party to the previous adjudication).

### D.      Full and Fair Opportunity to Litigate

A full and fair opportunity to litigate is presumed if the state proceedings satisfied the requirements of due process. *Rider v. Pennsylvania*, 850 F.2d 982, 991 (3d Cir. 1988); *Bradley v. Pittsburgh Bd. of Educ.*, 913 F.2d 1064, 1074 (3d Cir. 1990); *see also Shank v. E. Hempfield Twp.*,

10

Civ. A. No. 09-2240, 2010 WL 2854136, at *10 (E.D. Pa. July 10, 2010) (finding full and fair opportunity to litigate existed because party could present evidence, cross-examine witnesses, and seek judicial review of an agency's administrative determination).

Before the hearing examiner, Smith was represented by a lawyer, called witnesses and submitted evidence on his behalf, and cross-examined Bethel Township's witnesses. (Hr'g Tr.) The hearing officer issued a written decision that made factual and legal conclusions, to which Smith exercised his right to file exceptions. Subsequently, his exceptions were considered and rejected by an administrative appellate body. If there is additional process which Smith is due, he has not illuminated what it might be. *See Hitchens*, 98 F. App'x at 115-16 (finding full and fair opportunity to litigate in context of Pennsylvania Labor Relations Board hearing); *Hinshillwood*, 2002 WL 1773059, at *5 (same) (citing *Stokes*, 683 F. Supp. at 502).

## IV.     CONCLUSION

Defendants satisfy the four requirements for application of issue preclusion under Pennsylvania law. Accordingly, their motion for summary judgment is granted and Smith's claims are dismissed. An Order consistent with this Memorandum will be docketed separately.